Argued and submitted January 28, reversed and remanded in part, affirmed in part
May 1, reconsideration denied July 5, petition for review allowed September 24, 1985
(300 Or 111)

# 1000 FRIENDS OF OREGON,
## *Petitioner,*

### *v.*

# LAND CONSERVATION AND DEVELOPMENT
## COMMISSION et al,
### *Respondents.*

## (84-ACK-027; CA A31278)

698 P2d 1027

Robert L. Liberty, Portland, argued the cause and filed the briefs for petitioner.

Jeffrey Bennett, Assistant Attorney General, Salem, argued the cause for respondent Land Conservation and Development Commission. With him on the brief were Dave Frohnmayer, Attorney General, and James E. Mountain, Jr., Solicitor General, Salem.

George B. Stevenson, County Counsel, Gold Beach, argued the cause and filed the brief for respondent Curry County.

Before Joseph, Chief Judge, and Warden and Newman, Judges.

JOSEPH, C. J.

## JOSEPH, C. J.

Petitioner seeks review of LCDC's order acknowledging the Curry County comprehensive plan and land use regulations as complying with the statewide land use planning goals.[1] We affirm in part and reverse in part.

■ Petitioner argues in its first assignment of error that the criteria set forth in the plan for the identification of "commitment" exception areas are in conflict with Goal 2 and with applicable statutory and regulatory exceptions standards. LCDC answers, *inter alia:*

> "Goal 2 provides that exceptions to the goals are treated as plan amendments. When a county amends an acknowledged plan the goals, not the plan, are the standards against which an exception decision is measured. ORS 197.732(6)(b), (8) and ORS 197.835(4). Accordingly, when post-acknowledgement exceptions are taken, the applicable legal standard is found in Goal 2, Part II and the [sic] ORS 197.732(1), not in the county's plan."

We agree that the exceptions criteria in the plan have no legal effect. It is therefore not necessary that we reach the question of whether the criteria are in conflict with the state standards.

Petitioner's second assignment of error states:

> "Many of the rural communities, Harbor Bench exceptions and other exceptions to Goals 3 and 4 taken by Curry County and acknowledged by LCDC violate Goal 2 and ORS 197.732."

The argument that petitioner offers to support that assignment is virtually an incoherent maze. It consists—along with other equally uninstructive matter—of references to general geographic areas, statements of general legal principles and an invitation to this court to review the more particularized objections, contained in the record, that petitioner made to LCDC. Although the point of the assignment is that LCDC erred by acknowledging several exceptions taken by the county, the closest petitioner comes to focusing its argument on particular exceptions or particular rulings by LCDC is a snippet of specific comment concerning one exception area

---

[1] We reviewed a separate petition from the same order in *Lord v. LCDC,* 73 Or App 359, 698 P2d 1026 (1985).

that petitioner offers "by way of example." Petitioner observes that it "does not have the space in [its] brief to repeat all the detailed objections it submitted to LCDC." That, read with the rest of petitioner's argument, is equivalent to an appellant stating in a civil appeal that he does not have the space to include the entire transcript in his brief and requesting the court to review the transcript in search of specific errors that fit the general model that the appellant describes in his argument.

■ ■    The deficiencies of petitioner's argument are compounded by the fact that the section of its brief that our rules require to summarize the facts does not recite any facts. It states instead:

> "In an appeal from a Circuit Court trial or a quasijudicial contested case a great deal depends on the facts as found by the judge, jury or referee. In an appeal from two levels of administrative hearings such as the present one facts are rarely disputed and the Court's task is chiefly a choice between competing interpretations or applications of law. Facts are relevant insofar as there is a challenge to the substantiality of the evidence supporting a decision, but this only involves a weighing or evaluation of a volume of undisputed facts supporting, or contradicting certain conclusions.

> "Under these circumstances of an appeal from an uncontested case proceeding, a narrative summary of material facts would probably be neither helpful nor concise. To the extent particular facts are relevant to 1000 Friends' arguments they are set out in the body of those arguments and referenced to the record and Appendix. The chronology of events leading up to LCDC's order is given in the Abstract."

There is a twofold difficulty with that statement. First, whether or not the facts are disputed or dispositionally significant, the court does have to know what the facts are. The reason we require briefs to contain a statement of facts is not solely as a predicate for argument; the requirement is also designed to help the court to know what the case is about. The second problem is that petitioner does not carry out its stated intention to recite the facts in the context of the arguments to which they are relevant, at least in connection with its second assignment. The assignment is simply not sufficient, and we decline to review it.

■    In its third assignment, petitioner challenges LCDC's acknowledgment of the plan and zoning ordinance provisions relating to division of farm lands. Goal 3 provides, in relevant part, that "minimum lot sizes as are utilized for any farm use zones shall be appropriate for the continuation of the existing commercial agricultural enterprise with[in] the area." *See also* ORS 215.263. Petitioner and LCDC agree that, under ORS 215.263(2) and applicable provisions of OAR 660-05-000 *et seq,* LCDC's Goal 3 administrative rule, local governments may follow either a specified minimum lot size approach or a case-by-case approach in reviewing proposed agricultural land divisions. Curry County's plan specifies minimum lot sizes for its agricultural zones. However, the lot sizes are described as "guidelines" rather than absolute minimum sizes, and the guidelines are required to be considered together with other factors in a case-by-case review of proposals to divide farm lands. The lot sizes in the plan are neither independent nor absolute criteria.

Petitioner contends that the county's lot size guidelines must nevertheless be determined in accordance with the statutory and regulatory standards that govern the establishment of minimum lot sizes. In a 1982 order, LCDC agreed with petitioner and stated that the county

> "has not demonstrated that its parcel guidelines are consistent with the 'types and sizes of commercial farm units' in [the affected zones] as required by OAR 660-05-015(6)(a)."

LCDC advised the county that, to comply with Goal 3, it must

> "[p]rovide factual support for the parcel size guidelines used in the EFU, AFD and FG zones and adjust where necessary to ensure that the lot sizes are 'appropriate for the continuation of the existing commercial agricultural enterprise' in Curry County."

LCDC also required the county to clarify the relationship between the parcel size guidelines and the other land division criteria in its plan, *inter alia,* to

> "ensure that only commercial farm units are used to determine what the appropriate lots sizes are."

After the 1982 order, the county amended its plan and ordinance to make it clearer that it would follow a case-by-case approach to the review of farm land divisions; to

articulate the factors that would be considered in reviewing proposed divisions; to incorporate statutory and regulatory language relating to the case-by-case approach into the county provisions; and to emphasize that

> "[t]he parcel size [guidelines are] a general finding of the comprehensive plan for purposes of reviewing divisions of resource land by the specific criteria under [the zoning ordinance] and [they are] not a minimum lot size class of [the zones]."

However, the county did not eliminate the minimum lot size guidelines or demonstrate how the guidelines complied with the statutory and regulatory criteria for fixing minimum lot sizes.

The county submitted its amended plan and ordinance to LCDC in 1983 and, in the 1984 order that we now review, LCDC concluded that the amended provisions satisfy Goal 3. Petitioner asserts that that conclusion was error. It argues, *inter alia:*

> "In 1984 as in 1982 the parcel size was only a 'guideline,' not an absolute minimum. * * * In 1984 as in 1982 Curry County used other criteria along with the guidelines. But somehow, what was unjustified and unacceptable in 1982 remained factually unjustified but nonetheless became acceptable in 1984."

LCDC responds in its brief:

> "Because the guidelines are neither required by Goal 3 nor considered by the County as a minimum lot size, petitioner's point is irrelevant. The County's plan clearly states that the guidelines merely *indicate* the smallest size parcel that can be used for farm purposes in a specific area. The plan, as required by Goal 3, however, also requires an investigation of existing agricultural enterprise in the area * * *." (Emphasis LCDC's.)

We agree with petitioner's conclusion. LCDC's reasoning loses sight of the fact that, whether the lot sizes specified in the plan are "guidelines" or absolute criteria and whether they are the exclusive factor or one of several factors that can influence the county's review of a proposed land division, they *are* specified minimum lot sizes and they *can* have an effect on the approval or disapproval of a division of agricultural land. LCDC's order does not satisfactorily explain why they should not have to be determined consistently with

the statutory and regulatory standards applicable to minimum lot sizes. LCDC concluded in its 1982 order that the county had not shown that the guidelines satisfied those standards. Juxtaposed with the 1982 order, the sense of the present order *seems* to be that, if the minimum lot sizes specified in the plan *may* but *will not necessarily* be a significant factor in allowing or disallowing a land division, they do not have to satisfy applicable statutory and regulatory requirements. We hold that LCDC's 1984 acknowledgment of the county's agricultural land division provisions is inconsistent with its 1982 order, and the inconsistency has not been sufficiently explained.[2] ORS 183.482(8)(b)(B). LCDC's disposition of the plan and ordinance provisions relating to agricultural land divisions are reversed and remanded for reconsideration.

■■ Petitioner's fourth assignment is adversely answered by earlier decisions of this court, and we reject petitioner's suggestion that we overrule those decisions. Its fifth assignment of error has no merit. Its contention in its sixth assignment is that the county violated Goal 14 by permitting high density residential and other urban development in rural areas outside the urban growth boundary (UGB). LCDC and the county argue that the urban development is permissible, because Goal 2 exceptions have been taken to allow the urban uses in question. The validity of those exceptions is not in issue here. However, petitioner argues that the exceptions on which LCDC and the county rely are not independently sufficient to allow the development because:

> "[N]ew urban types of uses require not merely a Goal 2 exception to Goal 3 (Agricultural Lands) or Goal 4 (Forest Lands) *but to Goal 14* [(citing *1000 Friends of Oregon v. Wasco County Court,* 68 Or App 765, 775, 686 P2d 385, *rev allowed* 298 Or 68 (1984)]. Where such developments already exist, obviously a Goal 14 exception is not necessary. But in order to allow *new* urban-type commercial and industrial uses a Goal 14 exception is required." (Emphasis petitioner's.)[3]

---

[2] We do not reach any question under this assignment concerning the correctness of LCDC's underlying legal conclusions in either 1982 or 1984.

[3] Notwithstanding the county's and LCDC's reliance on the exceptions in their responses to petitioner's sixth assignment, the quoted passage from *petitioner's reply brief* is the first occasion when any of the parties undertakes to inform us that the exceptions on which respondents rely are exceptions to Goals 3 and 4. The existence and nature of the exceptions are critical to the parties' positions, but none of their arguments in connection with this assignment specifically describes the exceptions or

We have held that, under some circumstances, a local government may be required to take an exception to Goal 14 to allow an urban use on rural land. *1000 Friends of Oregon v. Wasco County Court,* 68 Or App 765, 774-75, 686 P2d 375, *rev allowed* 298 Or 68 (1984); *Perkins v. City of Rajneeshpuram,* 68 Or App 726, 732, 686 P2d 369, *rev allowed* 298 Or 238 (1984); *cf. Branscomb v. LCDC,* 297 Or 142, 681 P2d 124 (1984) (when a local government's urban growth boundary is first established, the decision to include agricultural lands in the UGB is subject to Goal 14 rather than Goal 3). However, neither the Supreme Court nor we have held that a county or an incorporated city that has taken exceptions to Goals 3 and 4 to permit the nonresource use of land that is subject to the resource use requirements of those goals must also take an exception to Goal 14 in order to allow the same use. We now hold that a Goal 14 exception is not required under the facts here.

■■■ The exceptions provisions in ORS 197.732 and Goal 2 create a process and define the conditions under which a local government may permit a land use that, without an exception, would be inconsistent *with the goal to which the exception is taken.* We made it clear in *Perkins v. City of Rajneeshpuram, supra,* 68 Or App at 732, that, although Goal 14's procedures and criteria are exclusive *for purposes of establishing a UGB,*

---

refers us to the specific places in the record where the exceptions can be found. Because petitioner appears to concede that the county took exceptions to Goals 3 and 4 to allow the urban uses, we will assume that that is true. That assumption does not quite close the factual gap in the parties' presentations, because it remains possible that some of the rural land for which exceptions were taken is not agricultural or forest land to which Goal 3 or Goal 4 applies.

The key issue that petitioner formulates in its reply brief is whether there must be an exception to Goal 14 as well as exceptions to Goals 3 and 4 to allow urban uses on rural land. Petitioner does not *seem* to argue that any of the land on which the urban uses are contemplated is rural land that is not resource land subject to Goals 3 or 4. It is, of course, equally true that the county and LCDC do not state that all of the exceptions on which *they* rely relate to land that is subject to those goals. We must confess to some ambivalence about which party should suffer the consequences of a collective failure to apprise the court of the relevant facts or to give the court a fair opportunity—should we wish to avail ourselves of it—to locate the facts in the record for ourselves. Nonetheless, it is petitioner's responsibility to demonstrate error. We understand petitioner's position to be that a Goal 14 exception is necessary in addition to or instead of exceptions to Goals 3 and 4, not that any of the land in question is not subject to Goals 3 or 4.

In addition to the argument petitioner sets out in the passage we have quoted from its reply brief, it makes certain other arguments in support of its sixth assignment. The other arguments are not viable in this appeal if, as we conclude, petitioner is incorrect in its contention that an exception to Goal 14 was necessary.

the substantive land use requirements of the resource goals are nevertheless applicable to local governments that do not have acknowledged comprehensive plans. As best we can understand the parties' arguments, *see* n 3, *supra,* the issue here does not involve the inclusion of resource land in a UGB, but the urban development of resource land that is outside the county's UGB. Goals 3 and 4 specifically regulate the use of that land. There is no legal or logical reason why the county should be required to supplement its exceptions to those goals with an exception to Goal 14.[4]

Reversed and remanded for reconsideration of the plan and ordinance provisions pertaining to divisions of farm land; affirmed in all other respects.

---

[4] There are logical problems with petitioner's understanding that an exception to Goal 14 is an appropriate alternative to exceptions to Goals 3 and 4 as the method for allowing nonresource uses of resource land. The principal requirement of Goal 14 is that local governments establish "[u]rban growth boundaries * * * to identify and separate urbanizable land from rural land." The determination of what land is rural and what land is urbanizable has to be based on the seven factors enumerated in the goal. Although two of those factors relate directly to agricultural land and activities, none of the factors relates particularly to forest lands and uses; furthermore, the agricultural factors in Goal 14 are not as explicit or comprehensive as are the standards in and requirements of Goal 3. Goal 14 comes into operation at the stage when local governments "identify" the nature of the lands under their jurisdiction. It takes little imagination to discern that the greater the scope of what can be allowed or circumvented through an exception to Goal 14, the less likely it is that Goals 3 and 4 can have their intended regulatory effect.