Argued and submitted December 12, 1984, affirmed as modified September 17, 1985

PERKINS et al,
*Respondents - Cross-Petitioners
on Review,*

*v.*

CITY OF RAJNEESHPURAM,
*Petitioner - Cross-Respondent
on Review,*

*and*

WASCO COUNTY, OREGON,
*Respondent - Cross-Petitioner
on Review.*

(83-094, 83-095; CA A31157; SC S31065)

706 P2d 949

Ma Prem Sangeet, Rajneeshpuram, argued the cause and filed the petition for review for petitioner - cross-respondent on review.

Robert E. Stacey, Portland, argued the cause for respondents - cross-petitioners on review Perkins *et al.* With him on the response to the petition and on the reply to the brief of *amici curiae* was Mark J. Greenfield, Portland.

Wilford K. Carey, Hood River, argued the cause for respondent - cross-petitioner on review Wasco County.

Jeff Bennett, Assistant Attorney General, Salem, argued the cause for Land Conservation and Development Commission.** With him on the response to the petition and on the reply to the brief of *amici curiae* were Dave Frohnmayer, Attorney General, James E. Mountain, Jr., Solicitor General, and Michael B. Huston, Assistant Attorney General, Salem.

Swami Anutosh Nion, The Rajneesh Legal Services Corporation, Rajneeshpuram, filed a brief on behalf of *amici curiae* Rajneesh Neo-Sannyas International Commune and Rajneesh Investment Corporation.

PETERSON, C. J.

---

** Land Conservation and Development Commission appeared pursuant to ORAP 5.18.

## PETERSON, C. J.

The city of Rajneeshpuram annexed 119 acres and thereafter zoned the annexed property to permit urban development. The Land Use Board of Appeals (LUBA) reversed the city's annexation and contemporaneous zoning ordinances. The city appealed to the Court of Appeals, which affirmed LUBA. We affirm the Court of Appeals as modified herein.

The issue presented is this: Once a city has adopted an urban growth boundary (UGB), but before the comprehensive plan containing the UGB has been acknowledged[1] by the Land Conservation and Development Commission (LCDC) pursuant to ORS 197.251, may the city rely upon the adopted UGB when converting agricultural land included within the UGB to urban uses, or must the city continue to comply with the requirements of the statewide land use planning goals until acknowledgment is achieved? As did the Court of Appeals, we conclude that until acknowledgment the city must continue to comply with the requirements of the individual land use goals, taking exceptions to the goals where necessary.[2]

In September 1982, the city adopted a comprehensive plan that contained a proposed UGB. The plan was submitted to LCDC for acknowledgment review. ORS 197.251. In June 1983, LCDC concluded that the city's proposed UGB failed to comply with Goal 14, the Urbanization Goal,[3] and by order

---

[1] "Acknowledgment" is defined in ORS 197.015(1) as

"* * * a commission order that certifies that a comprehensive plan and land use regulations, land use regulation or plan or regulation amendment complies with the [statewide land use planning] goals."

[2] The exceptions procedure previously contained in Goal 2, part II, of the statewide land use planning goals was revised and codified in 1983. Or Laws 1983, ch 827, § 19a. The effective date of the statute, ORS 197.732, was August 9, 1983.

[3] Goal 14 states in part:

"*Establishment and change of the* [UGB] shall be based upon consideration of the following factors:

"(1) Demonstrated need to accommodate long-range urban population growth requirements consistent with LCDC goals;

"(2) Need for housing, employment opportunities, and livability;

"(3) Orderly and economic provision for public facilities and services;

"(4) Maximum efficiency of land uses within and on the fringe of the existing

continued the city's acknowledgment request for 150 days.

After consultation with LCDC staff, the city notified Wasco County of its intent to relocate the proposed UGB to bring it into compliance with the land use goals. Wasco County postponed consideration of the proposed revisions.[4] During this time, the city was considering certain annexations. On August 9, 1983, the Wasco County planning office urged the city to postpone the annexations. On August 24, 1983, the city amended its proposed UGB by ordinance.

On August 28, 1983, the city adopted the annexation and zoning ordinances that are the subject of this controversy. The annexed territory lies entirely within the city's amended proposed UGB. At the time of the annexation, the annexed land was designated for exclusive farm use in the Wasco County Comprehensive Plan. *See* ORS 215.203.[5] The new zoning designations adopted by the city allowed urban development not permissible in exclusive farm use zones. In adopting the annexation and zoning ordinances, the city did not address Goal 3, the Agricultural Lands Goal, or the Goal 3 requirement that a governing body proposing to convert rural

---

urban area;

"(5) Environmental, energy, economic and social consequences;

"(6) Retention of agricultural land as defined, with Class I being the highest priority for retention and Class VI the lowest priority; and,

"(7) Compatibility of the proposed urban uses with nearby agricultural activities."

*See 1000 Friends of Oregon v. Wasco County Court,* 299 Or 344, 363, 703 P2d 207 (1985). LCDC found that the city's proposed UGB did not meet factors 3, 4 and 5.

[4] The adoption of a UGB is to be a cooperative effort between a city and the affected county or counties. *See* ORS 197.190; Goal 2 (Land Use Planning); Goal 14. In their petition to LUBA, petitioners assigned as error the city's failure to cooperate with Wasco County in the adoption of the UGB. LUBA declined to find that the city had violated the coordination requirements, noting that the city had attempted to coordinate with Wasco County, but the county had not cooperated.

[5] ORS 215.203 defines "farm use" as follows:

"As used in this section, 'farm use' means the current employment of land for the primary purpose of obtaining a profit in money by raising, harvesting and selling crops or by the feeding, breeding, management and sale of, or the produce of, livestock, poultry, fur-bearing animals or honeybees or for dairying and the sale of dairy products or any other agricultural or horticultural use or animal husbandry or any combination thereof. 'Farm use' includes the preparation and storage of the products raised on such land for human use and animal use and disposal by marketing or otherwise. * * *"

agricultural land to urban uses follow the goal exceptions procedure.[6] Instead, relying upon the findings made in conjunction with adoption of the amended UGB, the city addressed the four conversion factors of Goal 14.[7]

Perkins *et al* and 1000 Friends of Oregon (1000 Friends), as petitioners, and Wasco County, as participant,[8] appealed the city's action to LUBA. LUBA reversed, holding that the city lacked legal authority to adopt the ordinances and that, in any event, the ordinances violated Goal 2 (Land Use Planning), Goal 3 and Goal 14 of the statewide land use planning goals. On the city's appeal, the Court of Appeals affirmed LUBA's holding that the ordinances violated the goals. *Perkins v. City of Rajneeshpuram,* 68 Or App 726, 686 P2d 369 (1984).

Before reaching the goals issue, we turn briefly to the issue pertaining to the city's authority to adopt the ordinances

---

[6] The 119 acres annexed by the city consisted entirely of agricultural land. Goal 3 states that "[a]gricultural land shall be preserved and maintained for farm use." The goal contains this provision relating to the conversion of agricultural land to urbanizable land:

"Conversion of rural agricultural land to urbanizable land shall be based upon consideration of the following factors: (1) environmental, energy, social and economic consequences; (2) demonstrated need consistent with LCDC goals; (3) unavailability of an alternative suitable location for the requested use; (4) compatibility of the proposed use with related agricultural land; and (5) the retention of Class I, II, III and IV soils in farm use. A governing body proposing to convert rural agricultural land to urbanizable land shall follow the procedures and requirements set forth in the Land Use Planning goal (Goal 2) for goal exceptions."

[7] Land within an established UGB may be converted over time to urban uses based upon consideration of the four conversion factors contained in Goal 14. Goal 14 provides in part:

"Land within the [UGB] separating urbanizable land from rural land shall be considered available over time for urban uses. Conversion of urbanizable land to urban uses shall be based on consideration of:

"(1) Orderly, economic provision for public facilities and services;

"(2) Availability of sufficient land for the various uses to insure choices in the market place;

"(3) LCDC goals; and,

"(4) Encouragement of development within urban areas before conversion of urbanizable areas."

[8] Wasco County filed a statement of intent to participate. LUBA concluded that Wasco County had standing to challenge the ordinances under ORS 197.830(3)(b) because Wasco County had "appeared before the local government."

in question. In 1981 the Wasco County Court authorized an incorporation election for the proposed city of Rajneeshpuram. That decision was appealed to LUBA and, ultimately, to this court. *See 1000 Friends of Oregon v. Wasco County Court,* LUBA No. 81-132 (Sept. 30, 1983), *reversed and remanded* 67 Or App 418, 679 P2d 320, *withdrawn on reh'g* 68 Or App 765, 686 P2d 375 (1984), *modified* 299 Or 344, 703 P2d 207 (1985). During the course of that appeal (the "incorporation appeal"), on September 30, 1983, LUBA held that the Wasco County Court order was invalid. Our 1985 decision once again remanded the case to LUBA. The correctness of the 1981 Wasco County Court incorporation order remains unresolved. *See generally 1000 Friends of Oregon v. Wasco County Court, supra.*

On May 18, 1982, during the pendency of the incorporation appeal, the eligible voters voted to incorporate the city of Rajneeshpuram. A city council was elected and a charter was approved.

■ In the instant proceeding before LUBA, the petitioners asserted that because the incorporation appeal was still pending, the city lacked the authority to adopt the ordinances. LUBA agreed, holding that its 1983 remand "rendered ineffective the petition for incorporation until such time as the county took action to correct the deficiencies noted in [LUBA's] order." *Perkins v. City of Rajneeshpuram,* 10 Or LUBA 88, 94 (1984). Petitioners' collateral attack on the city's validity is barred by ORS 12.270(4).[9] We therefore reach the merits of the goals issue, to which we now turn.

■ We first consider how the land use goals are to be applied to decisions to annex and zone for urban development agricultural land lying entirely within an adopted but

---

[9] ORS 12.270(4), Or Laws 1975, ch 326, § 2, provides:

"On September 13, 1975, any proceeding which establishes or alters the boundaries of a governmental subdivision previously or hereafter initiated and purported to be effected in accordance with applicable legal requirements shall be conclusively presumed valid for all purposes one year after the purported effective date of the action. No direct or collateral attack on the action may thereafter be commenced. This statute of limitations includes but is not limited to the following proceedings:

"* * * * *

"(4) Incorporations under ORS 221.010 to 221.090."

unacknowledged UGB.[10] Under Goal 14, the creation of a UGB is the mechanism by which rural land and urbanizable land are identified and separated. *1000 Friends of Oregon v. Wasco County Court, supra,* 299 Or at 363. The second sentence of Goal 14 states, "Urban growth boundaries shall be *established* to identify and separate urbanizable land from rural land." (Emphasis added.)[11] Once a UGB is "established," land included within the UGB is deemed "urbanizable" and "shall be considered available over time for urban uses." Goal 14; *see also* ORS 197.752(1). Conversion of urbanizable land to urban uses is accomplished by considering the four conversion factors of Goal 14. See *supra* note 7. Once a city has an "established" UGB, the substantive requirements of the land use goals that would otherwise apply *to* resource land[12] are inapplicable to land included within the UGB. Land use planning decisions thereafter are made by applying the local government comprehensive plan. *Byrd v. Stringer,* 295 Or 311, 316-17, 666 P2d 1332, 1336 (1983).

---

[10] Both LUBA and the Court of Appeals treated the city's annexation and zoning as one act. LUBA reasoned:

"'* * * This annexation was done in conjunction with rezoning and immediate conversion of rural land for urban use. Our review must look to what happened, and not simply to bits of what happened or what might have happened. Our review must always be responsive to the facts of a particular case. * * * We believe we must consider the annexation *and* the rezoning together under the applicable goals." *Perkins v. City of Rajneeshpuram,* 10 Or LUBA 88, 100 (1984) (original emphasis).

The city assigns this as error, claiming that annexation is a "political decision which changes political boundaries, but has no effect on land use." Be that as it may, the legislature deemed annexation a land use decision to which the goals must be applied. *See* ORS 197.175(1) and 197.015(10); *see generally 1000 Friends of Oregon v. Wasco County Court, supra,* 299 Or at 355-59. We will treat the two ordinances as one act in this case.

[11] For a more complete discussion of Goal 14 and UGBs, see *1000 Friends of Oregon v. Wasco County Court, supra,* 299 Or at 350-70.

[12] The terms "resource land" and "nonresource land" are defined by OAR 660-04-005:

"(2) 'Resource land' is land subject to the statewide Goals listed in OAR 660-04-010(1)(a) through (f) except subsection (c).

"(3) 'Nonresource land' is land not subject to the statewide Goals listed in OAR 660-04-010(1)(a) through (f) except subsection (c). * * *"

OAR 660-04-010(1)(a) through (f), except (c), list those goals which, by reference to the definition of "resource land," are known as the "resource goals." Those statewide goals are: Goal 3 (Agricultural Lands); Goal 4 (Forest Lands); Goal 16 (Estuarine Resources); Goal 17 (Coastal Shorelands); and Goal 18 (Beaches and Dunes).

 Central to the resolution of this case, then, is the answer to this question: When is a UGB "established" within the meaning of Goal 14? The city argues that a UGB is established when adopted by the local government. The Court of Appeals, based upon that court's previous decision in *Roth v. LCDC,* 57 Or App 611, 646 P2d 85 (1982), held that a UGB is not established until it is acknowledged by LCDC pursuant to ORS 197.251. *Perkins,* 68 Or App at 730, 686 P2d at 372. We agree with the Court of Appeals. A UGB is established when acknowledged.

This conclusion is compelled by ORS 197.175(2), which provides:

"Pursuant to ORS 197.005 to 197.430 and 197.610 to 197.850, each city and county in this state shall:

"* * * * *

"(c) Except as provided in ORS 197.835(7) [not applicable to this case], *if its comprehensive plan and land use regulations have not been acknowledged by the commission, make land use decisions in compliance with the goals;* and

"(d) If its comprehensive plan and land use regulations have been acknowledged by the commission, make land use decisions in compliance with the acknowledged plan and land use regulations." (Emphasis added.)

 Although ORS 197.175(2) does not expressly mention UGBs, Goal 14 requires that a city's proposed UGB and the findings in support of it "shall be included in the comprehensive plan." The entire plan and implementing ordinances, including the proposed UGB, are then submitted to LCDC for acknowledgment review. Under ORS 197.175(2)(c), until that plan is acknowledged, land use decisions must be made in compliance with the goals, not the unacknowledged plan. The same holds for the proposed UGB included in the plan. Only after acknowledgment can a city make land use decisions under the comprehensive plan, implementing ordinances and UGB. ORS 197.175(2)(d). We hold that because the city did not have an acknowledged UGB when the annexation and zoning ordinances were adopted, the city was required to comply with the requirements of the individual land use

goals.[13]

■ Acknowledgment by LCDC certifies that a comprehensive plan complies with the goals. ORS 197.015(1); *see Byrd v. Stringer, supra,* 295 Or at 316, 666 P2d at 1336; ORS 197.251(1). Until acknowledgment, the UGB is without effect. Preacknowledgment land use decisions affecting land within the proposed UGB must comply with the individual goals, including the exceptions procedure of ORS 197.732. *See Byrd v. Stringer, supra,* 295 Or at 316, 666 P2d at 1336; ORS 197.175(2)(c).

The land affected by the annexation and zoning ordinances was "rural" agricultural land, *i.e.,* agricultural land lying outside an acknowledged UGB.[14] LUBA and the Court of Appeals held that the city is required to take an exception to both Goal 3 and Goal 14 in order to comply with the land use goal requirements.

The statutory goal exceptions procedure is set forth in ORS 197.732(1):

---

[13] The conclusion that a UGB is only established when acknowledged is consistent with our recent decision in *1000 Friends of Oregon v. Wasco County Court, supra.* In *Wasco County Court,* we were called upon to determine whether Goal 14 prohibits the incorporation of a new city on rural land outside an existing UGB. Both 1000 Friends (also a party in the instant case) and LCDC contended that the effect of incorporation alone is to make land available for urbanization, and that because Goal 14 prohibits urbanization of rural land, Goal 14 prohibits incorporation of a new city on rural land absent an exception to Goal 14. We rejected the theory that incorporation alone somehow makes land available for urbanization, and concluded that only after LCDC acknowledges the new city's comprehensive plan, which includes approval of a proposed UGB, does the land become *ipso facto* urbanizable. *See generally 1000 Friends of Oregon v. Wasco County Court, supra,* 299 Or at 361-67. We stated:

"* * * [B]efore establishment of the UGB, the land within the new city's corporate boundaries retains its previous classifications. Until such time as the new city considers the seven establishment factors and adopts a UGB, pursuant to Goal 14, in cooperation with the affected county or counties, *see* ORS 197.190, and until LCDC acknowledges the comprehensive plan which includes the proposed UGB, ORS 197.251, the designations in the county's comprehensive plan and ordinances will continue to apply to the land within the new city's corporate boundaries. *City of Salem v. Families for Responsible Govt,* [298 Or 574, 580, 694 P2d 965, 968 (1985)]; ORS 215.130(2)." 299 Or at 365 (footnote omitted).

[14] The Statewide Planning Goals define "rural lands" as

"* * * those which are outside the urban growth boundary and are:

(a) Non-urban agricultural, forest or open space lands or,

(b) Other lands suitable for sparse settlement, small farms or acreage homesites with no or hardly any public services, and which are not suitable, necessary or intended for urban use."

"A local government may adopt an exception to a goal when:

"(a) The land subject to the exception is physically developed to the extent that it is no longer available for uses allowed by the applicable goal;

"(b) The land subject to the exception is irrevocably committed as described by commission rule to uses not allowed by the applicable goal because existing adjacent uses and other relevant factors make uses allowed by the applicable goal impracticable; or

"(c) The following standards are met:

"(A) Reasons justify why the state policy embodied in the applicable goals should not apply;

"(B) Areas which do not require a new exception cannot reasonably accommodate the use;

"(C) The long term environmental, economic, social and energy consequences resulting from the use at the proposed site with measures designed to reduce adverse impacts are not significantly more adverse than would typically result from the same proposal being located in areas requiring a goal exception other than the proposed site; and

"(D) The proposed uses are compatible with other adjacent uses or will be so rendered through measures designed to reduce adverse impacts."

As a general proposition, the three statutory bases for exceptions allow a local government to "adopt an exception" if specific circumstances justify departure from the state policy embodied in a particular goal.

■ Goal 3 requires a governing body proposing to convert rural agricultural land to urbanizable land to follow the exceptions procedure. See *supra* note 6. It is not disputed that the city's ordinances in this case constituted a proposal to convert rural agricultural land to urban uses. Therefore, the city was required by the express terms of Goal 3 to adopt an exception.

■ Whether an exception to Goal 14 is also required is a question not so readily answered. The goal only expressly requires an exception for a *change* of a UGB, and not for the *establishment* thereof. *Branscomb v. LCDC,* 297 Or 142, 147, 681 P2d 124, 127 (1984); Goal 14. The applicability of the exceptions procedure to Goal 14, where the proposed land use

does not involve the establishment or change of a UGB, is not addressed by the goal and has not been considered previously by this court.

In *1000 Friends of Oregon v. Wasco County Court, supra,* 299 Or at 363, this court noted that "[o]n its face, Goal 14 provides a process for the establishment and change of UGBs, and nothing more." However, the policy embodied in the goal is that a city should not convert rural land to urbanizable land or urban uses prior to inclusion within an acknowledged UGB. The purpose of the goal, which comports with the policy of the land use statutes in general,[15] is "[t]o provide for an orderly and efficient transition from rural to urban land use." This purpose is effected by the establishment of the UGB. Urbanization is to occur within a UGB adopted upon consideration of the seven establishment factors set forth in Goal 14 and subsequently acknowledged by LCDC.

If Goal 14 compliance is required to separate urbanizable land from rural land, a proposal by a city with no established UGB to urbanize land manifestly requires at least compliance with the seven Goal 14 "establishment factors," see *supra* note 3, and the four conversion factors, see *supra* note 7, *or* justification sufficient to meet the criteria of the exceptions procedure if it is not possible to comply with the factors contained within the goal itself.[16]

The city's proposal to convert rural agricultural land to urban uses prior to inclusion within an acknowledged UGB required the city to adopt an exception to Goal 3. In addition, the city was required to comply with Goal 14 either by (1) meeting its requirements, or (2) following the exceptions procedure and adopting an exception to the goal.[17]

---

[15] The legislature was particularly concerned that "[u]ncoordinated use of lands within this state threaten[s] the orderly development, the environment of this state and the health, safety, order, convenience, prosperity and welfare of the people of this state." ORS 197.005(1).

[16] As stated above, the city addressed only the four conversion factors.

[17] The city adopted the annexation and zoning ordinances on August 28, 1983. The city based its decision not to consider the substantive requirement of the goals or take exceptions to Goal 3 or Goal 14 on the mistaken belief that the city could rely on its adopted but unacknowledged UGB, and not on an understanding that exceptions to Goal 14 are not required. Any subsequent action by the city to adopt exceptions must be taken under current law.

The statutory exceptions procedure was enacted in 1983. Or Laws 1983, ch 827, §

The Court of Appeals is affirmed as modified.

---

19a. Section 19b of that enactment provided:

"The commission shall amend the goals and other rules, as necessary, to make them consistent with the provisions of section 19a of this Act no later than January 1, 1984. To the extent existing goals or rules are consistent with section 19a of this Act, they remain in effect unless revised or repealed by the commission. * * *"

The current administrative rules pertaining to the exceptions process, OAR 660-04-000 *et seq,* suggest that the exceptions process is generally applicable to Goal 14. OAR 660-04-010(1)(c); *see also* OAR 660-14-040(2) (exception to Goal 14 available to establish new urban development on undeveloped rural land). By LCDC rule, an exception is not required to Goal 14, or any other goal, for the establishment of a UGB. OAR 660-04-010(1)(c)(A). ORS 197.732 does not exclude any particular goal from its operation. *Cf. 1000 Friends of Oregon v. Wasco County Court, supra,* 299 Or at 367 (interpreting ORS 197.175(1)). Although, as claimed by the city, OAR 660-04-000, before revision in December 1983, and prior agency pronouncements did appear to exclude Goal 14 from the operation of the then applicable Goal 2, part II, exceptions procedure as a whole, the current rule makes Goal 14 subject to the exceptions procedure.