Argued and submitted September 13, reversed and remanded for reconsideration
October 30, 1985

## 1000 FRIENDS OF OREGON et al,
*Petitioners,*

*v.*

## LAND CONSERVATION AND DEVELOPMENT
## COMMISSION et al,
*Respondents.*

## (83-CONT-111; CA A30016)

708 P2d 1147

Mark J. Greenfield, Portland, argued the cause and filed the briefs for petitioners.

Jeff Bennett, Assistant Attorney General, Salem, argued the cause for respondent Land Conservation and Development Commission. With him on the brief were Dave Frohnmayer, Attorney General, and James E. Mountain, Jr., Solicitor General, Salem.

Ma Prem Sangeet, City Attorney, Rajneeshpuram, argued the cause and filed the briefs for respondent City of Rajneeshpuram.

Before Richardson, Presiding Judge, and Warden and Newman, Judges.

RICHARDSON, P. J.

## RICHARDSON, P. J.

Petitioners seek review of LCDC's continuance order in its acknowledgment review of the comprehensive plan and land use regulations of the city of Rajneeshpuram.[1] LCDC concluded that the city's plan and regulations comply with Goals 1, 2 and 5 through 13; that the city's proposal for its urban growth boundary (UGB) satisfies Goal 14 establishment factors (1), (2), (6) and (7) but not factors (3) through (5); and that Goals 3 and 4 are inapplicable in the compliance review.

■    Petitioners contend initially that LCDC lacked jurisdiction to review or abused its discretion by not deferring review of the city's plan and regulations, because, petitioners assert, the city was not lawfully incorporated and because petitioners are challenging the validity of the city's incorporation in a separate proceeding that is now pending before LUBA. *See 1000 Friends of Oregon v. Wasco County Court,* 299 Or 344, 703 P2d 207 (1985). Petitioners argue that, under ORS 197.251, LCDC only has authority to review the plans of "local governments"; that "local government" is defined by ORS 197.015(12) as including "any city"; and that, not having been validly incorporated, the city of Rajneeshpuram is not a city.

Notwithstanding the many twists and turns that the incorporation challenge has undergone while this acknowledgment proceeding has been pending, *see 1000 Friends of Oregon v. Wasco County Court, supra,* the city's incorporated status has never been legally terminated and it has had that status at all relevant times. Petitioners' jurisdictional arguments come down to nothing more than their hope that they will ultimately prevail in a separate proceeding that is pending before a different forum. If they do prevail, the acknowledgment proceedings may be affected. *See City of Rajneeshpuram v. LCDC,* 76 Or App 55, 708 P2d 1152 (1985). However, at the time LCDC issued the order petitioners challenge here—as well as now—the issuance of the order was a proper exercise of LCDC's jurisdiction to review the plan and regulations of an

---

[1] The city and an affiliate have petitioned separately for review of the same order. We also issue our opinion on that petition today. *City of Rajneeshpuram v. LCDC,* 76 Or App 55, 708 P2d 1152

existing city that had sought compliance review pursuant to ORS 197.251.[2] We turn to the merits.

Goal 14 requires planning jurisdictions to establish UGBs "to identify and separate urbanizable land from rural land." The establishment of a UGB is governed by and requires consideration of seven factors enumerated in the goal:

"(1)    Demonstrated need to accommodate long-range urban population growth requirements consistent with LCDC goals;

"(2)    Need for housing, employment opportunities, and livability;

"(3)    Orderly and economic provision for public facilities and services;

"(4)    Maximum efficiency of land uses within and on the fringe of the existing urban area;

"(5)    Environmental, energy, economic and social consequences;

"(6)    Retention of agricultural land as defined, with Class I being highest priority for retention and Class VI the lowest priority; and

"(7)    Compatibility of the proposed urban uses with nearby agricultural activities."

The first substantive dispute is about what prerequisites, if any, the city had to satisfy before it could begin the process of establishing a UGB. LCDC adopted what the parties refer to as the "urban kernel theory," under which,

---

[2] In *Rajneesh Medical Corporation v. Wasco County,* 300 Or 107, 706 P2d 948 (1985), and *Perkins v. City of Rajneeshpuram,* 300 Or 1, 706 P2d 949 (1985), the Supreme Court held that the collateral challenges to the city's incorporation that were made in those cases were time-barred under ORS 12.270. Some of petitioners' arguments here are wrong for the same reason. However, to the extent that petitioners' arguments turn on the fact that their incorporation challenge is pending before LUBA and on the proposition that the pendency of that proceeding affects LCDC's jurisdiction here, ORS 12.270 may not be the complete answer. The LUBA challenge was initiated within the limitation period of ORS 12.270. However, the reasons we have set forth in the text are the complete answer to petitioners' jurisdictional arguments.

We also reject, without discussion, two related arguments which petitioners make: first, that LCDC abused its discretion by not delaying its review of the city's plan until the incorporation challenge is resolved; and second, that LCDC was required to consider the validity—as distinct from the formal fact—of the city's incorporation in this proceeding. *See City of Rajneeshpuram v. LCDC, supra,* 76 Or App at 57, n 1.

before a city may draw a UGB, it must contain some urban land. To demonstrate that it is eligible to draw a UGB, a city must make a "minimal" showing that

"(1) resident and worker population exists, and (2) some combination of existing development coupled with public facility and service infrastructure exists. This showing is adequate to meet the purposefully general definition of 'urban land' in the Goals in cases where the existence of urban land is challenged."

LCDC concluded that the city met those criteria and that it was therefore entitled to engage in the UGB establishment process.

Petitioners agree with LCDC that the existence of urban land in a planning jurisdiction is a prerequisite to its establishment of a UGB. However, petitioners argue that LCDC's "minimal" tests for determining whether urban land exists are not enough and that, unless an exception to Goal 14 is taken, the drawing of UGBs by planning jurisdictions which have no demonstrable urban facilities, services or population levels should be impermissible. According to petitioners:

"* * * [U]nder LCDC's policy, any area of 150 people or more can create 'urban land' and satisfy the threshold test for establishing a UGB simply by incorporating. The mere existence of the city would meet the definitional requirement that there *be* a city. The presence of 150 people would mean that the area has 'concentrations of persons who generally reside and work in the area.' Whatever services exist in the area— regardless of their nature or scale—would be enough to show that the area has 'supporting public facilities and services.' " (Emphasis petitioners'.)

Although the city agrees with LCDC's conclusion that it was entitled to draw a UGB, it strongly disagrees with LCDC's reasoning and with the urban kernel theory. It argues:

"Where this urban kernel idea comes from is an utter mystery to anyone reading the findings. * * *

"* * * * *

"[LCDC's analysis] establishes beyond question that the imposition of an urban kernel requirement amends rather than interprets Goal 14. It establishes that the policy which supports the claimed 'interpretation' is not supported by the text, the policy, or past application of the goals.

"* * * * *

"The existence of urban development certainly is a relevant evidentiary issue in many cases. It is often relevant to such factors as need for future growth, efficient provision of services, and protection of farmland. However, to adopt a *per se* rule elevating a relevant fact to the status of a 'license to grow' or as a condition precedent to further urbanization is * * * inconsistent with the goals and the land use act * * *."

The city is correct. The Supreme Court stated in *Perkins v. City of Rajneeshpuram,* 300 Or 1, 706 P2d 949 (1985):

"In *1000 Friends of Oregon v. Wasco County Court,* [299 Or 344, 363, 703 P2d 207 (1985)], this court noted that '[o]n its face, Goal 14 provides a process for the establishment and change of UGB's, and nothing more.' However, the policy embodied in the goal is that a city should not convert rural land to urbanizable land or urban uses prior to inclusion within an acknowledged UGB. The purpose of the goal, which comports with the policy of the land use statutes in general, is '[t]o provide for an orderly and efficient transition from rural to urban land use.' This purpose is effected by the establishment of the UGB. Urbanization is to occur within a UGB adopted upon consideration of the seven establishment factors set forth in Goal 14 and subsequently acknowledged by LCDC." 300 Or at 12. (Footnote omitted.)

As the Supreme Court held in *Perkins* and in *1000 Friends of Oregon v. Wasco County Court, supra,* Goal 14 creates a discrete mechanism—the UGB establishment and revision procedure—to govern urbanization; the goal does not regulate urbanization in any other way.

Petitioners rely on *1000 Friends v. LCDC,* 292 Or 735, 642 P2d 1158 (1982), as support for their contention that the urban kernel-urban development supplement to the goal's establishment factors is necessary to achieve the goal's purposes here. Petitioners misunderstand what the court said in that case and what the case was about. The issue in that case was whether an *amendment* to Goal 14 was consistent with the land use statutes; the amendment did not purport to change the text of the Goal 14 establishment factors, and the court's opinion seems to us to mean the opposite of petitioners' understanding that the court meant that those factors

are not sufficient in themselves to achieve the goal's objectives. Indeed, the vice in the amendment that the court held to be invalid was that it would have allowed cities to disregard five of the factors in including land inside corporate boundaries in their UGBs.

Petitioners also argue that the city was required to and did not take an exception to Goal 14 before it drew its UGB. Admittedly, the Supreme Court and we have left it less than clear when an exception to Goal 14 is necessary or possible. *Compare Perkins v. City of Rajneeshpuram, supra, with 1000 Friends of Oregon v. LCDC,* 73 Or App 350, 698 P2d 1027, *rev allowed* 300 Or 111 (1985). However, whatever uncertainty may exist in other connections, it is clear that there is no occasion for an exception to Goal 14 here. The purpose of the exceptions process is to relieve a planning jurisdiction from the requirements of a goal only if it cannot or demonstrates that it should not be required to apply the goal under particular circumstances. *See* ORS 197.732; Goal 2; *1000 Friends of Oregon v. LCDC, supra,* 73 Or App at 357. The principal issue in this case is whether the city's UGB complies with Goal 14. Accordingly, there is nothing to be excepted from Goal 14 here. The city and LCDC do not seek relief from the goal's requirements but have attempted to apply the goal; the question is whether they applied it rightly.

■ It is self-evident that the existence or non-existence of urban land, population concentrations, urban services and urban development can be relevant to the way in which the establishment factors are applied in particular cases. However, the fact that local governments and LCDC can give weight to those considerations in their *application* of the Goal 14 establishment factors does not mean that, without amending the goal, LCDC can treat those considerations *as* establishment factors or can make the application of the goal contingent on those considerations. Counsel for the city aptly stated at oral argument that, unlike the Fourteenth Amendment, "there is no penumbra to Goal 14."[3] We agree, and we reject petitioners' and LCDC's contentions that, in order to

---

[3] The statement was made in response to a question from the bench. We emphasize that our agreement with counsel's comment is limited to its Goal 14 ramifications and that we imply no interpretation of the Fourteenth Amendment in this opinion.

proceed with the establishment of a UGB under the facts here, the city had to do anything except apply the Goal 14 factors. It follows that we reject petitioners' assignments challenging LCDC's holding that the city was eligible to commence the establishment process.

Petitioners argue next that LCDC erred by construing and applying establishment factors (1) and (2) as governing "only *how much* and *which* land should be permitted to urbanize" and as having no bearing on *"whether any land* should be permitted to urbanize."[4] (Emphasis petitioners'.) LCDC answers that "[t]he establishment factors invoked when a UGB is established only govern how large and where the UGB will be." To support its argument, LCDC cites two of our decisions, one of which the Supreme Court reversed on all relevant points after LCDC filed its brief. In the other, *City of Salem v. Families For Responsible Govt,* 64 Or App 238, 668 P2d 395 (1983), *rev'd on other grounds,* 298 Or 574, 694 P2d 965 (1985), we adopted LCDC's characterization of

> "* * * factors (1) and (2) as the 'need factors' and factors (3) through (7) as the 'locational factors.' Local governments are required to use the 'need' factors to estimate the amount of land that their urban areas will need for future growth. The 'locational' factors are used to identify the lands most appropriate to accommodate that growth. * * *" 64 Or App at 243.

*See also 1000 Friends of Oregon v. Wasco County Court, supra,* 299 Or at 364, n 18.

We do not share LCDC's understanding of what we said in *City of Salem,* or of what factors (1) and (2) require. It is manifest, in our view, that the need factors are pertinent to whether there is *any* need for urbanization in an area and that the answer to "the amount of land that * * * [cities] will need

---

[4] Although petitioners do not *clearly* limit their argument to factors (1) and (2), we understand only those factors to be the intended subject. If our understanding is not correct, we reject the argument insofar as it is intended to encompass the other Goal 14 factors.

We also reject petitioners' contention that there cannot be a "demonstrated need" for urban development in the city unless LCDC finds

> "* * * that the thousands of acres of buildable lands identified for urban development *throughout Oregon cannot accommodate* the population projected for Rajneeshpuram." (Emphasis of "throughout Oregon" supplied; remaining emphasis petitioners'.)

for future growth" can be zero. The Supreme Court said in *1000 Friends of Oregon v. Wasco County Court, supra,* that, "[u]nder Goal 14, it is the establishment of the UGB, and not the city's creation, that makes land available for urbanization. * * * [B]efore establishment of the UGB, the land within the new city's corporate boundaries retains its previous classifications [as urban, urbanizable or rural]." 299 Or at 365. *See also Perkins v. City of Rajneeshpuram, supra.* It follows that factors (1) and (2) are not a mere waystop between incorporation and the reclassification and urbanization of rural land in this new city; they are *tests* against which *any* proposed change in the classification of land and *any* proposal to include rural land in the city's UGB must be measured. Because LCDC applied an incorrect legal standard in determining whether the city had complied with factors (1) and (2), we reverse and remand the UGB compliance issue to LCDC for reconsideration.

Petitioners next contend that LCDC erred "by failing to apply Goal 3 to its acknowledgment review of [the city's] plan and regulations." We cannot determine with certainty from the record or the parties' arguments whether LCDC's purported failure was to apply Goal 3 in connection with its review of *the city's UGB* or to apply Goal 3 *at all.* If the answer is the former, there was no error. *Branscomb v. LCDC,* 297 Or 142, 681 P2d 124 (1984). If the answer is the latter, there was. *1000 Friends of Oregon v. LCDC, supra,* 73 Or App at 357-58. We remand to LCDC to determine which is the answer and, if the latter is the one, for further consideration.

Reversed and remanded for reconsideration.