Argued and submitted December 5, 1988, affirmed January 25, 1989

# BENJFRAN DEVELOPMENT, INC.,
*Petitioner,*

*v.*

# METROPOLITAN SERVICE DISTRICT et al,
*Respondents.*

(LUBA 88-039; CA A50068)

767 P2d 467

Gregory S. Hathaway, Portland, argued the cause for petitioner. With him on the brief was Hanna, Murphy, Jensen & Holloway, Portland.

Daniel B. Cooper, Portland, argued the cause for

respondent Metropolitan Service District. On the brief was Lawrence S. Shaw, Portland.

Edward J. Sullivan, Portland, argued the cause for respondents, except Metropolitan Service District and 1000 Friends of Oregon. With him on the brief were Peggy Hennessy and Mitchell, Lang & Smith, Portland.

Keith Bartholomew, Portland, argued the cause for respondent 1000 Friends of Oregon. With him on the brief was Neil S. Kagan, Portland.

Before Richardson, Presiding Judge, and Warren and Deits, Judges.

RICHARDSON, P. J.

## RICHARDSON, P. J.

Petitioner seeks review of LUBA's affirmance of the Metropolitan Service District (Metro) denial of an amendment to its acknowledged metropolitan urban growth boundary (UGB). The amendment would have added an area of approximately 500 acres, which petitioner wished to use as the site of an "advance performance standards regional industrial park." That project, according to petitioner, would attract industry and jobs to the region, is akin to an industrial marketing technique which is coming into use in comparable metropolitan areas and cannot be located on any existing sites within the UGB. Metro concluded that petitioner had failed to establish a "need" to amend the UGB. LUBA agreed. We do, too, and affirm.

Goal 14 states seven factors on which the establishment and change of UGBs must be based. The first two, which are commonly described as the "need factors," require that, for land to be added to a UGB, there must be:

"(1)   Demonstrated need to accommodate long-range urban population growth requirements consistent with LCDC goals;

"(2)   Need for housing, employment opportunities and livability."

Petitioner's first assignment is that Metro and LUBA misapplied factor (2). Petitioner's premise is that Metro based its decision on what petitioner describes as a "sufficient growth" test, under which need for a UGB amendment cannot be demonstrated if the economic growth which is taking place within the UGB is consistent with or adequate for the year 2000 population projections which were made when the UGB was established. Petitioner contends:

"[A]ccording to Metro and LUBA, the application for the UGB amendment was properly denied on the grounds that [petitioner] failed to show that insufficient growth was occurring to meet the projections of needs relied upon in the establishment of the UGB. The decision can only be interpreted as requiring an applicant to answer the fundamental questions of whether economic development opportunities are needed, whether the people of a region need employment opportunities, and whether growth beyond projections should occur. LUBA's ruling permits the local government to then

hide behind the constraints imposed by projections which were intended simply to provide a basis, a starting point, for establishing a UGB, and to say that all a region 'needs' is to meet projections.

"* * * * *

"[A]t least where the proposed use is a legitimate economic developmental activity, projections are irrelevant to the determination of need in the consideration of a proposal for a UGB amendment. The need for economic development statewide has been determined as a matter of policy by the state legislature by the enactment of the Economic Development Law, ORS 197.707 et seq. Under this statute (and Statewide Goal 9, which the statute was enacted to bolster), a local government does not have the discretion to find that the region it serves does not need economic development."

Although petitioner does not so state, the core of its argument is that ORS 197.707 *et seq* and Goal 9 require local governments to treat economic development as a *per se* need to expand their UGBs and that developmental objectives either supersede the first two factors of Goal 14 or are incorporated into the second as the prevailing consideration. LUBA responded:

"Metro is not required to amend its UGB to provide appropriate land to accommodate every new industrial land marketing technique enjoying success in other major urban real estate markets. As Metro noted, such an extreme view of its obligation under Goal 14 is not warranted even if the amendment would attract industrial firms that may otherwise go elsewhere. Indeed, petitioner's view would require Metro to amend the UGB without consideration of whether loss of such firms threatens the industrial and employment growth Metro assumed would occur when it drew the UGB.

"With respect to petitioner's claim about Metro's obligation to consider Goal 9 and ORS 197.707 et seq., we find first that ORS 197.712(3) provides that comprehensive plan land use regulations must be in compliance with the law at the time of first periodic review. Metro is not yet subject to its first periodic review. Metro need not reach a decision on whether Metro wishes to take additional steps to stimulate growth until the time of periodic review.

"Second, we fail to understand how Metro's decision is not consistent with Goal 9. That is, we find nothing to suggest that Metro has ignored or violated Goal 9 by declining to

accept petitioner's view of the desirability of enlarging its UGB to accommodate an APS Regional Industrial Park. *See Lima v. Jackson Co.*, 3 Or LUBA 89 (1981), 56 Or App 619, 643 P2d 355 (1982)."

■ ■    We agree. Whatever the full relationship may be between the statutory and regulatory economic development provisions and the Goal 14 need factors, the former do not completely preempt the latter, as petitioner seems to postulate. Under petitioner's theory, local governments would be required to find a need to urbanize land to accommodate *every* developmental proposal, regardless of the adequacy of currently urbanized or urbanizable land to serve the economic development requirements of the locality. Petitioner suggests no reason why *its* proposal answers a need or why the current economic circumstances within Metro's UGB leave a need to be answered. Stated differently, petitioner's argument can succeed only if Goal 9, ORS 197.707 *et seq* or the implementing provisions which localities must adopt pursuant to the statutes mandate the approval of every land use proposal with potential beneficial economic effects. We hold that the argument does not succeed.

Although what we have said suffices to answer petitioner's first assignment, there are other difficulties with its argument which call for some discussion. Perhaps because ORS 197.712(3) makes the time of periodic compliance review the deadline for local implementation of ORS 197.707 *et seq,* we have not yet been called upon to construe those statutes. Petitioner assumes that the local economic development regulations that the statutes require must necessarily provide for particular UGB amendments which particular proponents seek at particular times. That assumption may well be incorrect. ORS 197.712(2)(g) provides:

"Local governments shall provide:

"(A)  Reasonable opportunities to satisfy local and rural needs for residential and industrial development and other economic activities *on appropriate lands outside urban growth boundaries,* in a manner consistent with conservation of the state's agricultural and forest land base; and

"(B)  Reasonable opportunities for urban residential, commercial and industrial needs *over time* through changes to urban growth boundaries." (Emphasis supplied.)

Petitioner's argument also treats factor (2) as existing in a vacuum and as providing a basis for a finding of need, without reference to the first Goal 14 factor. As LUBA correctly noted, in response to an argument of another party to this case:

"We add, 1000 Friends of Oregon's view of population projections and its narrow application of Goal 14, Factor 1 ignore the final enjoinder in Factor 1 that the UGB include land needed to accommodate the population 'consistent with LCDC goals.' The goals expressly include goals for housing, (Goal 10), and economic development and employment opportunities (Goal 9). Further, most goals address liveablility, whether directly or indirectly. In our view, rigid separation of Factors 1 and 2 into independent mandatory criteri[a] ignores the obvious overlaps between the two factors."

Similarly, petitioner's emphasis on the "employment opportunities" and "liveability" criteria of factor (2) lead it to disregard the standards of other goals which are incorporated into factor (1), *e.g.,* the resource land preservation and orderly urbanization requirements of Goals 3, 4, 5, 11 and 14.

We reject petitioner's first assignment. Its others are either rendered moot by our holding on the first, *see 1000 Friends of Oregon v. LCDC,* 76 Or App 46, 708 P2d 1147 (1985), do not warrant discussion, or both.

Affirmed.