Argued and submitted July 24, affirmed September 13, 2000

# HOME DEPOT U.S.A., INC.,
*Petitioner,*

*v.*

# CITY OF PORTLAND
and T.M.T. Development Company, Inc.,
*Respondents.*

(LUBA No. 99-078; CA A110155)

10 P3d 316

Timothy S. "Todd" Sadlo argued the cause for petitioner. With him on the brief were Frank M. Parisi and Parisi & Parisi, PC, and Corinne C. Sherton and Johnson & Sherton P.C.

Kathryn S. Beaumont, Senior Deputy City Attorney, argued the cause and filed the brief for respondent City of Portland.

No appearance for respondent T.M.T. Development Company, Inc.

Before Linder, Presiding Judge, and Deits, Chief Judge, and Brewer, Judge.

DEITS, C. J.

## DEITS, C. J.

Petitioner operates "large format retail uses" that, as usually configured, exceed 60,000 square feet in size. In 1999, the City of Portland amended its zoning ordinance to make retail facilities of that size nonpermitted in certain "industrial districts" where they previously had been conditionally permissible. The amendment also made the uses only conditionally permissible in certain "employment districts" where they had previously been permitted outright. The amendments did not affect the city's "commercial districts," in some of which the large format facilities are permitted. Further, with one immaterial exception, the amendments did not remove any territory from its existing zoning for commercial, industrial, or other "economically-related" uses. Indeed, the purpose of the amendments, as explained in the city's findings, was to

> "protect Portland's industrial sanctuaries, areas that generate a high percentage of family-wage jobs, from large-scale retail and office uses and their negative impacts on traffic and land value."

Petitioner appealed to LUBA, contending, *inter alia*, that the amendments were inconsistent with or were not supported by adequate findings to demonstrate their consistency with statewide planning Goal 9 (pertaining to economic development).[1] LUBA affirmed the city's actions. Petitioner now seeks our review, and we also affirm.

Goal 9 requires, as relevant, that local plans for urban areas are to provide "for at least an adequate supply of sites of suitable size, types, locations, and service levels for a variety of industrial and commercial uses[.]" Further, under an implementing regulation, OAR 660-009-0015(3), local comprehensive plans must include an inventory of lands "which are designated for industrial or commercial use."

---

[1] Petitioner also relied on a city comprehensive plan policy that implements the statewide goal. For purposes of our discussion, no differentiation is necessary.

Petitioner's arguments appear to fall into two basic—albeit intermingled—categories: That the city's findings, record and articulated bases for its amendments do not establish compliance with Goal 9; and that, as a matter of substance, Goal 9 requires the city to "at least consider" the impacts of the amendments "on the supply of lands available for large format retail uses." Petitioner's arguments presuppose that the goal's general requirements pertaining to sites for a "variety of industrial and commercial uses" embody a specific requirement for the consideration or provision of sites for the particular kind of retail use that the city's amendments restrict and that petitioner wants to conduct.[2]

■■  Like LUBA, we disagree with petitioner's premise. Goal 9 does not require local governments to make land available for every specific kind of economically productive use that anyone wishes to conduct (let alone to make land for every use available in a particular zone or zones). The goal requires planning and provision for "a variety of industrial and commercial uses," not a herculean—or quixotic—planning and zoning effort whereby every community assures that there are available sites for every conceivable kind of business activity. *Benjfran Development v. Metro Service Dist.*, 95 Or App 22, 26, 767 P2d 467 (1989); *Western PCS, Inc. v. City of Lake Oswego*, 33 Or LUBA 369, 382 (1997).

Petitioner relies on *Opus Development Corp. v. City of Eugene*, 28 Or LUBA 670 (1995), and *Volny v. City of Bend*, ___ Or LUBA ___ , *aff'd* 168 Or App 516, 4 P3d 768 (2000). *See also Opus Development Corp. v. City of Eugene*, 30 Or LUBA 360, *aff'd* 141 Or App 249, 918 P2d 116 (1996). In those cases, LUBA held that the local governments were required by Goal 9 to consider the adequacy of their inventory of lands that would remain available for industrial or commercial uses in the aftermath of decisions that would actually redesignate or divert existing industrially or commercially zoned lands from *all* industrial and commercial use.

---

[2] It is important to emphasize that the amendments affect only the permissibility of prospective uses. No existing uses are involved or at risk.

*Opus Development* and *Volny* are inapposite for two reasons. First, unlike the local decisions in those cases, the amendments here do not deplete the supply of lands available for commercial and industrial uses. Rather, they simply change the conditions under which a *particular* kind of business activity may be approved within areas that remain zoned as business districts and remain available for business uses of various kinds. Second, and more to the point, the two cases lend no support to petitioner's central assumption that a zoning decision that reduces the availability of land for a *particular* industrial or commercial use must be accompanied by a showing that other land remains available for that particular use. *Opus Development* and *Volny* do not address that question. However, as discussed above, *Benjfran Development* and *Western PCS* are relevant to the question, and the holdings in those cases indicate that no such showing is necessary. *See also Port of St. Helens v. LCDC,* 165 Or App 487, 996 P2d 1014, *rev den* 330 Or 363 (2000).

■    Petitioner's substantive argument and its arguments concerning the need for demonstrations and findings are, of course, interrelated. If, as we conclude, Goal 9 does not require local governments to make *any* land available for a particular industrial or commercial use, a demonstration of or findings concerning the remaining availability of land for a given use is not *per se* required as part of a decision that reduces the amount of land that was previously available for that use.

LUBA rejected petitioner's argument concerning the adequacy of the city's findings on a number of grounds. We agree generally with LUBA's treatment of that argument, and we note in particular our agreement with its observation that "[t]here is no statutory requirement that legislative land use decisions be supported by findings demonstrating compliance with applicable legal criteria." We also note that the city *did* make the following finding in connection with the adoption of the amendments:

"Goal 9, Economic Development, requires provision of adequate opportunities for a variety of economic activities vital to public health, welfare and prosperity. The amendments

are consistent with this goal because they protect Portland's industrial sanctuaries, areas that generate a high percentage of family-wage jobs, from large-scale retail and office uses and their negative impacts on traffic and land value.

"In addition, the amendments provide an opportunity for emerging types of businesses that have both industrial and office characteristics to locate in specific areas within the Central City Plan District through a conditional use process. This provision supports creative reuse of existing, older industrial buildings that may no longer be appropriate for traditional industrial uses. It also provides opportunities near the City center for 'industries of the future' such as software development, internet sales and distribution, and others to locate.

"Portland *Comprehensive Plan* findings on Goal 9, Economic Development, and its related policies and objectives also support this goal." (Italics in original.)

Petitioner argues that that *finding* is inadequate to show compliance with Goal 9. In our view, however, the argument simply mirrors the substantive contentions that we have rejected. Petitioner's problem with the finding is that it does not "discuss any potential negative effects of the [amendments] on commercial uses generally or large format retail uses specifically." In fact, of course, "large format retail uses" are the only commercial uses that the amendments *could* have negatively affected and, given our holding that Goal 9 does not require the city to facilitate those particular uses, it is also not required to make findings that it has done what it is not required to do by law and has not done in fact.

When all is said and done, petitioner's challenges to the city's finding and to the substance of its decision reflect a disagreement at the policy and planning level. Petitioner assails the city for not offering a *solution* for the siting of large format retail uses. The city, on the other hand, considered and apparently made a policy decision that large format retail uses were the *problem*, insofar as they discouraged more optimal economic uses in the industrial and employment zones that were affected by the amendments. Moreover, during the city council hearings, a number of city officials, including the mayor, indicated that the problem was

not the use *per se*, but the size and format of the facilities in which petitioner chooses to conduct it.

■      This court is, of course, not the appropriate forum to resolve the policy and planning disagreement that petitioner has with the city. As to the matters that do fall within the proper scope of our review, petitioner demonstrates no legal error or other basis for reversal of the city's decision or LUBA's decision.[3]

Affirmed.

---

[3] Notwithstanding some of petitioner's descriptions, the city's actions do not make businesses of the kind in question totally impermissible. Were a governmental body to attempt to prohibit a particular kind of lawful business within its territory, issues of various kinds could well arise. We do not anticipate those issues here, and our opinion is expressly limited to the issue of what *Goal 9 requires* in connection with local legislation of the kind that the city did enact.