No. 677          September 25, 2024          205

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

DEPARTMENT OF LAND CONSERVATION
AND DEVELOPMENT,
*Respondent,*

*v.*

CLACKAMAS COUNTY
and Jessey Cereghino,
*Petitioners.*

Land Use Board of Appeals
2023078;
A184663 (Control), A184684

Argued and submitted August 29, 2024.

Garrett H. Stephenson argued the cause for petitioner Jessey Cereghino. Also on the brief were Schwabe Williamson & Wyatt P. C.

Jane E. Vetto and Caleb Huegel filed the brief for petitioner Clackamas County.

Robert M. Wilsey, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Carrie A. Richter, William K. Kabeiseman, and Bateman Seidel P.C. filed the brief *amicus curiae* for City of Oregon City.

Before Tookey, Presiding Judge, Egan, Judge, and Kamins, Judge.

TOOKEY, P. J.

Affirmed.

**TOOKEY, P. J.**

These two petitions for judicial review of an order of the Land Use Board of Appeals (LUBA) (A184684 and A184663), consolidated for resolution by this opinion, concern the construction of OAR 660-004-0040, an administrative rule of the Land Conservation and Development Commission (LCDC). The Clackamas County Board of Commissioners approved a change in the zoning of intervenor's rural residential property from 10-acre to 2-acre minimum without taking an exception from Statewide Planning Goal 14 (Urbanization).[1] LUBA determined that, under OAR 660-004-0040(7), the county was required to evaluate the zone change under Goal 14 and remanded the order to the county for that purpose.

On judicial review, the county and intervenor contend that LUBA erred in its construction of the administrative rule and in concluding that the county was required to evaluate the zone change under Goal 14. Intervenor further contends that LUBA misapplied its statutory scope of review and lacked authority to remand the county's decision. The Department of Land Conservation and Development (DLCD) responds that LUBA correctly remanded the county's decision for consideration of Goal 14.[2]

We review the issues raised on judicial review for whether LUBA's order is unlawful in substance. ORS 197.850(9) (setting forth the standard and scope of judicial review of a LUBA order); *Mountain West Investment Corp. v. City of Silverton*, 175 Or App 556, 559, 30 P3d 420 (2001) (A LUBA order is unlawful in substance "if it represent[s] a mistaken interpretation of the applicable law."); *Foland v. Jackson County*, 215 Or App 157, 163-64, 168 P3d 1238, *rev den*, 343 Or 690 (2007) (A LUBA order is unlawful in substance if LUBA misapplied the governing law). We conclude

---

[1] Statewide Planning Goal 14 (Urbanization) is:

"To provide for an orderly and efficient transition from rural to urban land use, to accommodate urban population and urban employment inside urban growth boundaries, to ensure efficient use of land, and to provide for livable communities."

[2] The City of Oregon City has filed an amicus brief in support of DLCD's position on judicial review.

that the order is not unlawful in substance and therefore affirm.

We begin our discussion with a summary of the Supreme Court's opinion in *1000 Friends of Oregon v. LCDC (Curry County)*, 301 Or 447, 724 P2d 268 (1986), which is foundational to our analysis. *Curry County* involved a challenge by 1000 Friends of Oregon (1000 Friends) to LCDC's acknowledgment of Curry County's comprehensive land use plan. 1000 Friends challenged the zoning the county had applied to several thousand acres of land to allow residential development at densities of one to five acres, without taking a Goal 14 exception. The county had previously taken exceptions to Goals 3 and 4, which had been acknowledged by LCDC. In support of its decision, the county took the position, and LCDC and this court agreed, that the exceptions to Goals 3 and 4 were sufficient to address any issues related to urban development, and that no exception to Goal 14 was necessary. *1000 Friends of Oregon v. LCDC*, 73 Or App 350, 698 P2d 1027 (1985).

In *Curry County*, the Supreme Court concluded that an exception to Goal 14 was necessary. The court stated that it had before it the question of "what Oregon's land use planning law requires a county to do before the county allows 'urban uses' of lands located outside [urban growth boundaries (UGB)]." *Id.* at 449. The technical question presented to the court was when, "having justified 'exceptions' to allow uses other than the farming and forestry that Statewide Planning Goals 3 [Agricultural lands] and 4 [Forest Lands] would otherwise require on certain lands," "must a county justify for those same lands 'exceptions' to Goal 14, which aims '[t]o provide for an orderly and efficient transition from rural to urban land use.'" *Id.*

The Supreme Court explained that urban uses are not permitted outside of urban growth boundaries unless an exception to Goal 14 is taken or the use is compliant with Goal 14.[3] In reversing and remanding LCDCs acknowledgement of Curry County's comprehensive plan and zoning

---

[3] A Statewide Planning Goal exception is a comprehensive plan provision by which a local government recognizes or allows for a use of land that any goal would otherwise prohibit. *See* ORS 197.732(1)(b); OAR 660-015-0000(14).

ordinance, the Supreme Court held that LCDC's acknowledgment must determine whether Curry County's comprehensive plan and zoning ordinance converted rural land to urban uses and, if so, whether the county had adequately considered the criteria of Goal 14. *Id.* at 521. As a practical matter, the Supreme Court's opinion in *Curry County* means that Goal 14 compliance or an exception is required when the potential effect of zoning on rural land outside of a UGB is to convert the land to an urban use.

In response to *Curry County*, in 2000, LCDC adopted OAR 660-004-0040, (the Rural Residential Rule) to delineate the circumstances under which a Goal 14 exception is required for a change to zoning of rural lands in acknowledged exception areas planned for residential development. The relevant provisions of the rule provide:

"(1)  The purpose of this rule is to specify how Goal 14 'Urbanization' applies to rural lands in acknowledged exception areas planned for residential uses.

"(2)  For purposes of this rule, the definitions in ORS 197.015, the Statewide Planning Goals and OAR 660-004-0005 shall apply. In addition, the following definitions shall apply:

"* * * * *

"(f)  'Rural residential areas' means lands that are not within an urban growth boundary, that are planned and zoned primarily for residential uses, and for which an exception to Goal 3 'Agricultural Lands', Goal 4 'Forest Lands', or both has been taken.

"(g)  'Rural residential zone currently in effect' means a zone applied to a rural residential area that was in effect on October 4, 2000, and acknowledged to comply with the statewide planning goals.

"(3)(a)  This rule applies to rural residential areas.

"* * * * *

"(4)(a)  * * *

"(b)  Some rural residential areas have been reviewed for compliance with Goal 14 and acknowledged to comply with that goal by the department or commission in a

periodic review, acknowledgment, or post-acknowledgment plan amendment proceeding that occurred after the Oregon Supreme Court's 1986 ruling in [*Curry County*], and before October 4, 2000. *Nothing in this rule shall be construed to require a local government to amend its acknowledged comprehensive plan or land use regulations for those rural residential areas already acknowledged to comply with Goal 14 in such a proceeding. However, if such a local government later amends its plan's provisions or land use regulations that apply to any rural residential area, it shall do so in accordance with this rule.*

"(5)     The rural residential areas described in subsection (2)(f) of this rule are 'rural lands.' *Division and development of such lands are subject to Goal 14, which prohibits urban use of rural lands.*

"(6)(a)  *A rural residential zone in effect on October 4, 2000 shall be deemed to comply with Goal 14 if that zone requires any new lot or parcel to have an area of at least two acres*[.]

"* * * * *

"(7)    *After October 4, 2000, a local government's requirements for minimum lot or parcel sizes in rural residential areas shall not be amended to allow a smaller minimum for any individual lot or parcel without taking an exception to Goal 14 pursuant to OAR chapter 660, division 14, and applicable requirements of this division.*"

(Emphases added.)

OAR 660-004-0040(5) states the default requirement that the division and development of "rural lands" "are subject to Goal 14, which prohibits urban use of rural lands." But the rule includes an exception. In OAR 660-004-0040(4)(b), LCDC recognized that, in response to the Supreme Court's opinion in *Curry County*, and before the adoption of the Rural Residential Rule, some local governments had already adopted comprehensive plan and land use regulation amendments that had been acknowledged by LCDC. OAR 660-004-0040(4)(b) provides that local governments that had already adopted such comprehensive plan and land use regulation amendments were not required to further amend their comprehensive plans and land use regulations to comply with OAR 660-004-0040. The then-existing comprehensive plans and regulations were

thus deemed to be in compliance with Goal 14. Similarly, OAR 660-004-0040(6)(a) states that a rural residential zone of at least two acres in effect on October 4, 2000, "shall be deemed to comply with Goal 14." But OAR 660-004-0040(4)(b) provides that, if a local government amends those previously acknowledged comprehensive plans and land use regulations, the local government must "do so in accordance with [OAR 660-004-0040]," under which a Goal 14 exception is required. That requirement is emphasized in OAR 660-004-0040(7), which provides that, if after the October 4, 2000, effective date of the administrative rule, a local government amends its "requirements for minimum lot or parcel sizes in rural residential areas" "to allow a smaller minimum for any individual lot or parcel," the requirements "shall not be amended without taking an exception to Goal 14 pursuant to OAR chapter 660, division 14, and applicable requirements of this division."

We turn to the undisputed facts underlying of this case. The subject property is 111 acres of rural land located approximately one mile south of Oregon City's urban growth boundary and one mile northwest of the unincorporated community of Beavercreek. The property is directly east of and adjacent to Highway 213, and across the highway from a golf course. The subject property is within the boundaries of the Clackamas River Water District service area. It is also within an area for which exceptions to Statewide Planning Goal 3 (Agricultural Lands) and Goal 4 (Forest Lands) were taken in 1980, when the county's comprehensive plan was adopted. The subject property is designated "Rural" on the Clackamas County Comprehensive Plan (CCCP) map. That designation allows rural residential uses and is implemented by zoning map designations of Farm/Forest 10-Acre (FF-10), Rural Residential Farm Forest 5-acre (RRFF-5), and Rural Area Residential 2-acre (RA-2). Since 1981, the subject property has been zoned FF-10 on the county's zoning map. The FF-10 zone allows 10-acre minimum parcels.

The CCCP Policy 4.MM.11 sets forth specific, mandatory criteria governing the application of each rural residential zoning district, including the criteria for the RA-2 zoning. The CCCP Rural Residential policies allow

the rezoning of rural residential properties to zones with smaller minimum lot sizes ("upzoning") according to the criteria in CCCP Policy 4.MM.11, which do not require a Goal 14 exception.

In January 2002, as part of a periodic review, LCDC acknowledged the county's Rural comprehensive plan designation and RRFF-5 and RA-2 zoning designations as complying with Goal 14. LCDC's periodic review approval included approval of the county's "Work Task 13," which was specifically intended to "[r]esolve the Goal 14 issues raised in the Curry County Supreme Court decision for the areas zoned RRFF-5[ and] RA-2."

In 2023, intervenor applied to change the zoning map designation for the subject property from FF-10 to RA-2, which allows two-acre minimum parcels, and which would allow for future subdivision and development of the subject property for up to 55 two-acre lots. As proposed, the change would not change the rural designation of the property or require a comprehensive plan amendment; it would simply change the zoning of the property from 10-acre to 2-acre minimum, pursuant to the criteria stated in the county's acknowledged CCCP Policy 4.MM.11.

As explained above, in *Curry County*, in reversing and remanding LCDCs acknowledgement of Curry County's comprehensive plan and zoning ordinance, the Supreme Court held that urban uses are not permitted outside of urban growth boundaries unless an exception to Goal 14 is taken or the use is compliant with Goal 14. The court said:

> "Exceptions to Oregon Statewide Planning Goals 3, 4 and other resource goals cannot generally suffice as exceptions to Goal 14 because the former necessitate only a determination that a narrow category of uses, the particular resource uses that are required by the Goal, are impracticable, while the latter necessitates a finding that not merely resource uses, but all other rural uses, are impracticable."

301 Or at 485. A local government must undertake a Goal 14 analysis to determine whether rural land is to be converted to an urban use. *Id*. at 521.

And, as noted, the Rural Residential Rule delineates the circumstances under which an exception to Goal 14 is required on rural residential land in exception areas. Among those circumstances is a reduction in minimum lots size. The dispute on this judicial review centers on the meaning of OAR 660-004-0040(7), which states:

> "After October 4, 2000, *a local government's requirements for minimum lot or parcel sizes in rural residential areas* shall not be amended to allow a smaller minimum for any individual lot or parcel without taking an exception to Goal 14 pursuant to OAR chapter 660, division 14, and applicable requirements of this division."

(Emphasis added.)

Under ORS 197.610, a local government is required to submit proposed changes in a land use regulation, including zoning map changes, to DLCD. ORS 197.610(3)(b) (requiring submission of a proposed zoning map change in accordance with ORS 197.610 to ORS 197.625 post-acknowledgement procedures); ORS 197.615(2)(b) (same); OAR 660-018-0020(1) (same); OAR 660-018-0010(l)(a) ("a change" for purposes of post-acknowledge procedures means an amendment to the plan or implementing land use regulations, "including an amendment to the plan text or map"); OAR 660-018-0010(l)(g) defining a "map change" to mean "a change in the designation or boundary of an area as shown on the comprehensive plan map, zoning map or both, including an area added to or removed from a comprehensive plan or zoning map"). DLCD then notifies interested parties of the proposed change. ORS 197.610(4). ORS 197.610(7) provides:

> "When the director determines that a proposed change to an acknowledged comprehensive plan or a land use regulation may not be in compliance with land use statutes or the statewide land use planning goals, including administrative rules implementing either the statutes or the goals, the [Department of Land Conservation and Development] shall notify the local government of the concerns at least 15 days before the final evidentiary hearing, unless there is only one hearing or the proposed change has been modified to the extent that resubmission is required under subsection (6) of this section."

Thus, a proposed change to a comprehensive plan or land use regulation must be "in compliance with land use statutes or the statewide land use planning goals, including administrative rules implementing either the statutes or the goals."

Upon being notified of the county's proposed zone change, the DLCD submitted a letter to the county, taking the position that, in view of the fact that the county's comprehensive plan would allow the zone change without an exception to Goal 14, OAR 660-004-0040(7) applied directly to the application and required intervenor to obtain an exception to Goal 14 for the requested upzoning. DLCD stated that a Goal 14 exception is necessary, because the zone change would "amend the applicable requirements regarding minimum parcel size to allow a greater amount of development, triggering OAR 660-004-0040(7)."[4]

Intervenor responded that once a local government's comprehensive plan and land use regulations are acknowledged under ORS 197.251, the Statewide Planning Goals no longer apply directly to its land use decisions, other than those decisions that amend the acknowledged plan or regulations. Intervenor contended that, because the CCCP had already been acknowledged by DLCD, and Work Task 13 had been approved on periodic review, it must be assumed that DLCD had determined that the county was in compliance with OAR 660-004-0040(7); thus, intervenor asserted, no Goal 14 exception was required.

A county hearings officer agreed with intervenor, concluding that OAR 660-004-0040(7) did not require a Goal 14 exception for the upzoning, because both the FF-10 and the RA-2 zones, as stated in the CCCP Policy,[5] had

---

[4] Although LCDC is entitled to deference in the construction of its own administrative rule if that construction is not inconsistent with the wording of the rule, its context, or any other source of law, *Barkers Five, LLC v. LCDC*, 261 Or App 259, 302, 323 P3d 368 (2014), *DLCD*'s understandings and interpretations of the goals and rules adopted by LCDC are entitled to no deference, because the rule is a rule adopted by LCDC. *DLCD v. Jackson County*, 151 Or App 210, 220-21, 948 P2d 731 (1997). Thus, although DLCD drafted the rule for LCDC, DLCD's construction of the rule is not entitled to deference.

[5] CCCP Policy 4.MM.11.1 states:

"The RA-2 zoning district shall be applied when all the following criteria are met:

"a. Parcels are generally two acres or smaller.

previously been acknowledged by LCDC as consistent with Goal 14. The hearings officer's order became the county's final order.

DLCD appealed the hearings officer's order to LUBA, contending that the hearings officer had improperly construed OAR 660-004-0040(7), which, in DLCD's view, is straightforward and requires consideration of Goal 14 whenever a county increases development density zoning in a rural residential area. DLCD argued that, by its plain terms, OAR 660-004-0040(7) is triggered by an amendment that allows a smaller minimum for any individual lot or parcel, without distinction between a zoning code text amendment and a zoning map amendment. DLCD also argued that the amendment of the zoning is a post-acknowledgment amendment to the county's zoning code that is subject to the provisions for post-acknowledgment amendments, ORS 197.610 to ORS 197.625, including compliance with the goals and LCDC administrative rules.

Intervenor and the county (together, respondents) argued to LUBA that the phrase "local government requirements for minimum lot or parcel sizes" refers only to changes in a county's comprehensive plan and zoning ordinance *text* criteria that apply to rural residential areas, not to zoning *map* designations. The proposed zone change would not change any of the criteria for the RA-2 zone as stated in acknowledged CCCP Policy 4.MM.11; thus, respondents contended that the change in the zoning was not subject to OAR 660-004-0040(7)'s requirement for consideration of Goal 14. Respondents also argued that, because the comprehensive plan and the county's RA-2 zoning map designation had previously been acknowledged by LCDC to comply with Goal 14, DLCD's current construction of the Rural Residential Rule constituted a collateral attack on the acknowledged comprehensive plan. Intervenor further contended that ORS 197.835, which state's LUBA's scope of review of a county's

---

"b. The area is significantly affected by development.

"c. There are no natural hazards, and the topography and soils are suitable for the location of homes.

"d. A public or private community water system is available.

"e. Areas are in proximity or adjacent to an Unincorporated Community or incorporated city."

decision, did not provide LUBA with authority to review DLCD's appeal.

LUBA disagreed with intervenor that it lacked authority to review the county's order and reviewed the county's order under the scope of review stated in ORS 197.835(9)(a)(D), which provides that LUBA will reverse or remand a local government decision that improperly construes the applicable law. As for the merits of respondents' statutory construction argument, LUBA noted a lack of precision in the Rural Residential Rule, particularly its reference to a local government's *requirements* for minimum lot or parcel sizes. LUBA disagreed with DLCD's characterization of OAR 660-004-0040(7) as "straightforward" and described the phrase "local government requirements for minimum lot or parcel sizes" as ambiguous:

> "That phrase could refer to criteria set forth in the text of a local government's comprehensive plan or land use regulations, as respondents read it, or it could refer to both criteria and plan or zoning map designations that establish minimum lot or parcels sizes, as petitioner reads it. The text of the rule is ambiguous, and could support either party's construction of the rule."

LUBA explained that it understood the county hearings officer's construction of the term "requirements" to be a reference to the textual requirements for minimum lot sizes in the county's comprehensive plan or ordinances, not a reference to the zoning shown on maps. But LUBA nonetheless concluded that DLCD's construction was correct. LUBA reasoned that OAR 660-004-0040(7) does not limit "requirements" to changes to "legislative" textual provisions such as comprehensive plans, as urged by respondents. LUBA further noted that ORS 197.015(11) defines a "land use regulation" as "any local government zoning ordinance, land division ordinance adopted under ORS 92.044 or 92.046, or similar general ordinance establishing standards for implementing a comprehensive plan," and that the Clackamas County Zoning and Development Ordinance, ZDO 103.02(A), expressly incorporates zoning maps into the county's ordinance:

"Zoning district boundaries are hereby established as shown on the zoning maps of the unincorporated territory of Clackamas County, Oregon, which maps are hereby made a part of this Ordinance."

Thus, LUBA concluded, zoning maps are a part of the ordinance, and the county's proposed amendment to the zoning map designation for the subject property was an amendment to a land use regulation within the meaning of OAR 660-004-0040(7).

Finally, examining the legislative history of the Rural Residential Rule, LUBA determined that the intention of LCDC in the adoption of OAR 660-004-0040(7) was that zoning of two acres or more in effect on October 4, 2000 would be deemed to comply with Goal 14, but that any upzoning to a higher density, either through zoning map amendments or plan and zoning or ordinance text amendments, would require an exception to Goal 14. Thus, LUBA interpreted the phrase "a local government's requirements for minimum lot or parcel sizes" to refer generally to then-existing provisions in the acknowledged plan or zoning ordinance, including plan or map designations, that established minimum lot or parcel sizes in rural residential exception areas.

LUBA addressed intervenor's contention that the above construction is inconsistent with DLCD's 2002 approval of the county's "Periodic Review Work Task 13" and acknowledgment of the comprehensive plan in response to *Curry County*, after LCDC's adoption of the Rural Residential Rule. LUBA held:

"Section (4)(b) and Section (6)(a) of the Rural Residential Rule and the administrative rule history discussed above make clear that LCDC intended to recognize counties that had achieved, during the time between the court's decision in *Curry County* and the effective date of the rule, acknowledgement of existing rural residential zones as compliant with Goal 14. Section 7 of the rule makes clear that LCDC intended to prevent Upzoning of properties to an existing higher density rural residential zoning designation without a Goal 14 exception. [DLCD] is correct that Upzoning the property to a higher density zoning map designation requires an exception to Goal 14, pursuant to OAR 660-004-0040(7)."

LUBA also distinguished its own order in *Oregon Shores Coalition v. Curry County*, 53 Or LUBA 503 (2007). In that case, Coos County had sought to amend its zoning to allow a 2-acre parcel size. The county agreed that to do so required a Goal 14 exception. The petitioners contended that the county must also take Goal 14 exceptions to the existing 10 and 5-acre lot sizes that the county was not amending. LUBA rejected that contention, stating:

> "While the text of [OAR 660-004-0040(7)] could be clearer, we believe it refers to the amendment to allow a smaller minimum lot size and does not refer to an existing acknowledged zoning ordinance that already allowed a reduction from a ten-acre minimum lot size to a five-acre minimum lot size in the RR zone without an exception."

Thus, LUBA concluded that only *amendments* to comprehensive plans or zoning were subject to consideration under Goal 14, and LUBA allowed to stand the unamended, acknowledged portion of the plan, which had allowed 5 and 10-acre lot sizes without a Goal 14 exception. In contrast here, where the county seeks to change zoned minimum lot sizes, LUBA determined that the county erred in failing to review the proposed zone change under Goal 14; LUBA therefore remanded the county's order for that purpose.

We turn initially to intervenor's contention in its first assignment of error that LUBA misapplied its scope of review. ORS 197.835 states LUBA's scope of review and provides in relevant part:

> "(6)   The board shall reverse or remand an amendment to a comprehensive plan if the amendment is not in compliance with the goals.

> "(7)   The board shall reverse or remand an amendment to a land use regulation or the adoption of a new land use regulation if:

> "(a)   The regulation is not in compliance with the comprehensive plan; or

> "(b)   The comprehensive plan does not contain specific policies or other provisions which provide the basis for the regulation, and the regulation is not in compliance with the statewide planning goals."

"* * * * *

"(9)   In addition to the review under subsections (1) to (8) of this section, the board shall reverse or remand the land use decision under review if the board finds:

"(a)   The local government or special district:

"* * * * *

"(D)   Improperly construed the applicable law[.]"

Intervenor contends that the proposed zone change is not subject to reversal by LUBA under any of the above provisions of ORS 197.835. Intervenor asserts that the zone change is not subject to review under ORS 197.835(6), because the zone change does not effect an amendment to the acknowledged comprehensive plan and is, in fact, in compliance with the plan. And, intervenor asserts, because LUBA concluded that the zone change had resulted in an amendment of the county's zoning ordinance, only ORS 197.835(7) can provide a basis for LUBA's review of the county's decision, but that that subsection also does not apply, because the zone change is in compliance with the comprehensive plan, which intervenor asserts includes specific policies or other provisions that provide the basis for the change. ORS 197.835(7)(a), (b). Thus, in intervenor's view, LUBA lacked authority to reverse and remand the county's decision on DLCD's appeal.

We reject intervenor's argument relating to scope of review. As LUBA correctly explained, DLCD's assignment of error to LUBA, which LUBA concluded was preserved, was that the county's decision was the result of an improper construction of OAR 660-004-0040(7), which DLCD concluded is the "applicable law." As discussed more fully below in this opinion, we agree with LUBA's conclusion that OAR 660-004-0040(7) is the applicable law; thus, we agree with LUBA that its authority to reverse and remand the county's order is stated in ORS 197.835(9)(a)(D).

We turn to the merits of respondents' assignments of error. On judicial review, as before LUBA, the county and intervenor contend that LUBA misconstrued OAR 660-004-0040(7) to apply to zoning map changes, contending that the rule only applies to changes to comprehensive plan or ordinance criteria for zoning. Additionally, respondents

point out that an acknowledged comprehensive plan is the controlling land use planning instrument for a city. *Foland v. Jackson County*, 311 Or 167, 171, 807 P2d 801 (1991) ("[O]nce LCDC grants acknowledgement, the city or county no longer is technically required to make land use decisions in compliance with the goals"); *Cape v. City of Beaverton*, 187 Or App 463, 467, 68 P3d 261 (2003) ("[O]nce a local government's comprehensive plan and land use regulations are acknowledged under ORS 197.251, the Statewide Planning Goals no longer apply directly to its land use decisions."); *Kenagy v. Benton County*, 115 Or App 131, 134, 838 P2d 1976, *rev den*, 315 Or 271 (1992) ("After a county's comprehensive plan and land use regulations have been acknowledged as complying with the statewide planning goals, the local legislation becomes directly applicable to most of its land use decisions, and the goals cease to be applicable."). They assert that LUBA's order applying OAR 660-004-0040(7) conflicts with the established precedent that a local government land use decision in compliance with an acknowledged plan is not subject to review under the Statewide Planning Goals. Thus, respondents contend, LUBA erred in determining that the county's upzoning decision must be reviewed under Goal 14.

We address first respondents' contention (raised in intervenor's first assignment of error and in the county's single assignment of error) relating to the construction of OAR 660-004-0040(7). The issue presents a question of construction of the administrative rule, which we consider under the same principles applicable to the construction of statutes, examining the rule's text, context, and, if necessary, the administrative rule history, with the goal of discerning the intent of LCDC, the body that adopted the Rural Residential Rule. *LandWatch Lane County v. LCDC*, 290 Or App 694, 415 P3d 1064 (2018) (citing *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009); *PGE v. Bureau of Labor and Industries*, 317 Or 606, 859 P2d 1143 (1993)). For all the reasons provided by DLCD to LUBA and on judicial review, we conclude that the zone map amendment triggered the requirement to consider Goal 14 in the county's evaluation of the requested zone change. As LUBA held, the phrase "a local government's requirements for minimum lot or

parcel sizes" is susceptible to a plausible construction that it refers only to legislative textual requirements stated in a comprehensive plan or zoning ordinance. But we readily conclude that the more plausible construction of OAR 660-004-0040(7) is that the requirement for compliance with, or an exception to, Goal 14 is intended to apply also to zoning map changes that increase density. As LUBA pointed out, the rule does not limit "requirements" to textual requirements. Additionally, as LUBA also pointed out, the county's zoning map is a part of its ordinance. Thus, a change in the zoning map is an amendment of the ordinance. We therefore conclude that an amendment of an ordinance to upzone is an amendment of "the requirements for minimum lot or parcel sizes." Additionally, we conclude that context—OAR 660-004-0040(4)(b), (5), and (6)—as well as the administrative rule's adoption history, make clear the intention of LCDC that, consistent with the Supreme Court's opinion in *Curry County* relating to the urbanization of rural lands, after October 4, 2000, upzoning of rural residential land is to be subject to evaluation under Goal 14.

We turn to the county's second argument under its first assignment of error and intervenor's second assignment of error, in which respondents appear to contend that LUBA's order is unlawful in substance because it allows a collateral attack on the county's acknowledged comprehensive plan, in violation of ORS 197.175(2)(d). That statute provides, in part:

"(2)   Pursuant to ORS chapters 195, 196, 197 and 197A, each city and county in this state shall:

"* * * * *

"(d)   If its comprehensive plan and land use regulations have been acknowledged by the commission, make land use decisions and limited land use decisions in compliance with the acknowledged plan and land use regulations[.]"

Respondents are correct that, as ORS 197.175(2)(d) is construed, the generally applicable principle is that, after a local government's comprehensive plan and land use regulations have been acknowledged by LCDC, its land use decisions can be reviewed only for their compliance with the acknowledged plan and land use regulations; the goals do

not apply directly to post-acknowledgment land use decisions of a local government. *See generally State ex rel Butler v. City of Bandon*, 204 Or App 690, 131 P3d 855, *adh'd to as mod on recons*, 206 Or App 288, 136 P3d 1199 (2006) (explaining effect of ORS 197.175(2)(d) and the interaction of that statute with ORS 197.829(1)(d))[6]; *Friends of Neabeack Hill v. City of Philomath*, 139 Or App 39, 45-46, 911 P2d 350, *rev den*, 323 Or 136 (1996); *Ludwick v. Yamhill County*, 72 Or App 224, 696 P2d 536, *rev den*, 299 Or 443 (1985). But despite that general principle, there are circumstances in which a governing body's post-acknowledgment land use decisions must be evaluated under the goals. Among those circumstances are post-acknowledgment plan amendments. A land use decision that amends an acknowledged comprehensive plan is directly reviewable for goal compliance. ORS 197.835(6) ("The board shall reverse or remand an amendment to a comprehensive plan if the amendment is not in compliance with the goals."). A post-acknowledgment plan amendment "encompasses actions taken in accordance with ORS 197.610 through 197.625, *including amendments to an acknowledged comprehensive plan or land use regulation* and the adoption of any new plan or land use regulation." OAR 660-023-0010(5) (Emphasis added). The challenged zoning map change was an amendment of a land use regulation; thus, it was subject to the requirements for a plan amendment, including evaluation under the goals.

Finally, we note that state law, *viz.*, statutes or administrative rules, can require consideration of goals irrespective of acknowledgment. *See Butler*, 204 Or App at 701 ("Because the city's plan *** and implementing ordinances

---

[6] ORS 197.829(1) provides:

"(1) The Land Use Board of Appeals shall affirm a local government's interpretation of its comprehensive plan and land use regulations, unless the board determines that the local government's interpretation:

"(a) Is inconsistent with the express language of the comprehensive plan or land use regulation;

"(b) Is inconsistent with the purpose for the comprehensive plan or land use regulation;

"(c) Is inconsistent with the underlying policy that provides the basis for the comprehensive plan or land use regulation; or

"(d) Is contrary to a state statute, land use goal or rule that the comprehensive plan provision or land use regulation implements."

\* \* \* have been acknowledged, the pertinent permit approval criteria inhere in those documents *and in any state laws or regulations that apply irrespective of an acknowledgment.*" (Emphasis added.)); *Leathers v. Marion County*, 144 Or App 123, 130, 925 P3d 148 (1996) (even after acknowledgment "questions pertaining to the need for or sufficiency of state-wide goal exceptions are governed by applicable provisions of state law.").

OAR 660-004-0040(4)(b) is such a rule. It provides that, "if [after acknowledgment] such a local government later amends its plan's provisions or land use regulations that apply to any rural residential area, it shall do so in accordance with this rule." As we have explained above, the challenged zoning map change was subject to OAR 660-004-0040(4)(b), which explicitly requires consideration of Goal 14 upon an intensification of density in a rural residential area. The rule applies irrespective of acknowledgment. The county's amendment of its zoning map was an ordinance amendment that triggered OAR 660-004-0040(7). *See also* ORS 197.610(3)(b) (requiring submission to DLCD of a proposed zoning map change in accordance with ORS 197.610 to ORS 197.625 post-acknowledgement procedures); ORS 197.615(2)(b) (same); OAR 660-018-0020(1) (same); OAR 660-018-0010(l)(a) ("a change" for purposes of post-acknowledge procedures means an amendment to the plan or implementing land use regulations, "including an amendment to the plan text or map"); OAR 660-018-0010(l)(g) defining a "map change" to mean "a change in the designation or boundary of an area as shown on the comprehensive plan map, zoning map or both, including an area added to or removed from a comprehensive plan or zoning map"). Thus, the requirements of the Rural Residential Rule, OAR 660-004-0040(7), apply irrespective of any previously acknowledged comprehensive plan, and LCDC's prior acknowledgment and approval of periodic review of the Clackamas County comprehensive plan did not insulate the county from the requirements of OAR 660-004-0040(7) with respect to later ordinance amendments. *See also* ORS 197.646 (requiring local governments to amend their comprehensive plans and land use regulations to comply with new requirements in the administrative rules that implement the statewide

planning goals, and which provides that, when a local government does not do so, the new requirements apply directly to the local government's land use decisions). We emphasize that, under OAR 660-004-0040, zoning that has been acknowledged as of October 4, 2000, is deemed to be in compliance with Goal 14, and there is no need for consideration of Goal 14. The rule requires consideration of Goal 14 only in the context of an upzoning change of an existing zone. In that circumstance, we do not perceive a conflict between an application of OAR 660-004-0040(7) and the general principle that land use decisions that comply with an acknowledged comprehensive plan are not subject to the goals.

Affirmed.